[L. A. No. 6066. Department One.—February 2, 1921.]

### E. VAN CALBERGH, Appellant, v. ALICE A. EASTON et al., Respondents.

[1] FINDINGS — CONSTRUCTION ON APPEAL — INFERENCE FROM FACTS FOUND.—The findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment thereon, and whenever, from the facts found by it, other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court, and upon an appeal from that judgment the appellate court will not draw from those facts any inference contrary to that which may have been drawn by the trial court for the purpose of rendering such judgment.

[2] ADVERSE POSSESSION—APPEAL—FINDING—PRESUMPTION.—On an appeal from a judgment in favor of the defendant in an action to quiet title wherein plaintiff's claim was solely one of title by adverse possession, it must be assumed, in the absence of a contrary finding, that the court found that plaintiff had failed to prove such possession for the period of five years before the commencement of the action.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

2. Unbroken continuity as essential element in adverse possession, note, 15 L. R. A. (N. S.) 1202.

What temporary break will amount to abandonment of land held by adverse possession, note, Ann. Cas. 1916A, 606.

Frank C. Prescott and Prescott & Prescott for Appellant.

Charles Lantz and Samuel M. Garroway for Respondents.

LAWLOR, J.—Plaintiff brought this action against Alice A. Easton, and several others under fictitious names, to quiet title to lot 22 in block 3 of the subdivision of the south half of lot 5 in block F of Hancock's survey in the city of Los Angeles.

It was alleged that for five years immediately preceding the commencement of this action plaintiff has been the owner, in possession, and has paid the taxes on the property; that defendants claim and assert interests adverse to plaintiff, and that they are without any right whatever, "and that the said defendants have not . . . any estate, right, title, or interest . . . in said land." The defendants—Alice A. Easton, appearing by J. M. Moyer, her successor in interest, and said J. M. Moyer, one of those sued under a fictitious name—for answer and by way of cross-complaint deny that plaintiff is the owner or that he "has been in possession of said property, accompanied by payment of taxes thereon for any period of five years; admit that . . . J. M. Moyer claims an estate and interest in said property adversely to the plaintiff," and allege that J. M. Moyer is the owner in fee simple of said lot of land, and that neither the plaintiff nor the said other defendants own any estate or interest whatever therein. The allegations of the cross-complaint were denied.

In support of his claim of title to lot 22 plaintiff offered and there were received in evidence certain deeds, and tax receipts for the years 1908, 1909, 1910, and 1911, and produced a number of witnesses. Among the deeds admitted in evidence was one from W. B. Judson et al. to one C. D. Warden, dated and recorded September 30, 1907; a quit-claim deed from C. D. Warden to A. Lunnim, dated November 1, 1907, and recorded November 19, 1907; and a deed from C. D. Warden and his wife to the plaintiff, dated November 6, 1907, which was recorded on April 27, 1908. On November 25, 1907, the Southern California Title and Abstract Company, of which C. D. Warden was manager, issued to plaintiff a certificate of title to lot 22.

It was stipulated that on April 22, 1889, the fee simple to lot 22 vested in Alice A. Easton. It was shown that on December 30, 1909, W. J. Davis conveyed the property to J. M. Moyer, the deed being recorded May 20, 1911. The wife of the grantor joined in the deed. A decree quieting J. M. Moyer's title as against Alice A. Easton and others was entered on July 8, 1910.

J. M. Moyer produced certain tax receipts, which were admitted in evidence, showing payments made by W. J. Davis on January 27, 1908, and April 27, 1908, and for the second installment of the year 1911, paid by J. M. Moyer on February 7, 1912.

The cause was tried by the court, a jury having been waived. The court made findings of fact and conclusions of law. It was found that J. M. Moyer, as successor in interest of Alice A. Easton, was the owner in fee simple and entitled to the possession of the lot, and that "plaintiff has no estate, right, title, or interest in or lien upon the property or any portion of said property." The court made and entered a decree accordingly. A motion for a new trial was interposed and denied. The plaintiff appeals.

The court made no findings on the deed from C. D. Warden to plaintiff, and the latter makes no point on this, nor does he assert on appeal that he has title to lot 22 by virtue of such conveyance. He does, however, claim that he has acquired title to such property by adverse possession.

This is the second trial of the action. On the former trial judgment went for the plaintiff. The defendant appealed to the district court of appeal for the second appellate district, and the judgment was reversed on the grounds that plaintiff had failed to prove possession for the time required to establish title by prescription, and that he had failed to prove payment of all the taxes levied and assessed against the property during the period in which he claimed to have held possession thereof. A petition for hearing was filed in this court and denied, without, however, "approving the portion of the opinion relative to the matter of the payment of the second installment of taxes for the year 1911." (*Van Calbergh* v. *Easton,* 32 Cal. App. 796, 800, [164 Pac. 1113, 1115].)

The plaintiff claims that continuously for five years next preceding the filing of the complaint he had occupied and

used the property and that he "has proved an undisputed adverse possession and payment of all taxes for five years." No specific finding was made as to when plaintiff first entered upon lot 22, and we shall first consider whether it is to be implied that the court found plaintiff was not in possession of the lot for five years next preceding the bringing of the action.

The complaint was filed on November 12, 1912. Plaintiff testified that he went to the abstract company, met Warden there, and purchased lot 22 from him, having been told by a stranger that Warden was the owner thereof. "He told me he had the lot for sale. I paid Mr. Warden for the deed in cash money. I did not draw it from the bank. I had it on hand at the time. I did not keep any account or records of business transactions at that time. Q. Have you any record of when the fund came into your hands, or when you paid it out? A. No, nothing like that. Q. How long after you paid the money to Mr. Warden did you get the deed? A. I think I got it right after. Q. What do you mean right after? A. I don't quite recollect if it was the next day; I think it was the next day. Q. Did you get the certificate or abstract of title with the deed? A. No, sir. . . . I received the deed . . . about November; it must have been about the 6th or 7th, 1907, that I received it."

On the former trial, plaintiff stated that he received the deed in the "latter part of November." We quote from the decision on the former appeal: "The deed from Warden to the plaintiff was introduced in evidence. It bore date of November 6, 1907, but the plaintiff testified he did not receive the deed until the latter part of November, 1907. By that testimony we take it to mean that the transaction was completed and the deed delivered in the latter part of 1907. Plaintiff testified that he immediately took possession of the lot after receiving the deed, built a fence around it, and had used it continuously from that time on up to the date of the trial, which occurred in March, 1914." When plaintiff's attention was called to the variance in his testimony as to when he received the deed, he made several indefinite statements, but finally said it was delivered on the date it bears. When asked why he was so positive after a lapse of four or five years between the trials, and more than ten years after

the transaction, he replied he did not refresh his "memory at that time in court when I happened to say that."

It also appeared that plaintiff bought lot 22 and paid the purchase price without any examination of title; that he did not get a certificate thereof until November 25th—nineteen days after he claimed he received the deed and took possession, and that the conveyance was not recorded until April 27th of the following year. There is nothing in the testimony of the other witnesses for plaintiff to indicate that any of them had any knowledge as to when he first took possession of the land, and in view of the variant statements of plaintiff himself before he finally declared he made the entry on November 6th, we think it clear the court found he did not assume possession before "the latter part of November"—the time fixed by him on the former trial—or, at least, not prior to November 12th.

[1] It was said in *Breeze* v. *Brooks,* 97 Cal. 72, 77, [22 L. R. A. 257, 31 Pac. 742, 744]: "The findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment thereon, and whenever, from the facts found by it, other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court, and upon an appeal from that judgment, this court will not draw from those facts any inference of fact contrary to that which may have been drawn by the trial court for the purpose of rendering such judgment. The trial court in this case had before it the opinion of this court on the former appeal, and must be deemed to have made its findings of fact from the evidence before it in the light of what was then held to be essential to a recovery by the plaintiffs." (See, also, *Warren* v. *Hopkins,* 110 Cal. 506, 512, [42 Pac. 986], and *Perkins* v. *West Coast Lumber Co.,* 129 Cal. 427, [62 Pac. 57].)

[2] And, in the absence of a finding to the contrary, it must be assumed the court found plaintiff did not inclose, improve, or cultivate lot 22 for the period of five years next succeeding November 12, 1907. He testified that he first saw the lot when he went into that neighborhood in June, 1905. At that time he bought lot 21 adjoining lot 22 on the east. He built a house on lot 21 in 1906 and has been living there with his wife and some relatives of hers ever since. It is also suggested in plaintiff's brief that he acquired lot 20

to the east of lots 21 and 22, but when he did so does not appear. He also testified that after receiving the deed he, with the aid of his brother-in-law and one of the help, leveled up some knolls and filled in some holes on the lot, that he cut off some heavy brush—"I began to do that from the 6th of November"—and that he used to stake out his horses on the lot. Besides leveling off the lot he made some chicken-coops and raised vegetables for the kitchen. He continued using the lot for chickens right along—"I should judge five years." After he entered upon the lot he constructed a fence—"I guess it must have been six or seven or eight months—something like that."

George W. Barr testified that he had lived in the same neighborhood as plaintiff since 1909; that the lots on each side of plaintiff's house had been inclosed all of the time he had lived in the neighborhood; that plaintiff has been using the lot for pasturing his horse and chickens; that he had no house on lot 22. "He has kept poultry there since disposing of his horse. There is no chicken-house on that lot. The chickens just ranged over it. There was no wire fence that I know of. I believe there was nothing to keep the chickens on that particular lot."

Mrs. C. F. Stein testified: "I have known plaintiff since 1909, since we moved over there. . . . He has a vacant lot on each side of his residence. The home place of Mr. Calbergh, where he lives, is occupied by a house and inclosed by a fence. The lot west of that between his house and the river, as far as I remember it, has been inclosed on the side and the back." She also testified that horses were pastured on the lot.

Mrs. M. Bretz testified that she was living in the neighborhood with her family when plaintiff first came there. "We built first and he came about two years afterward. That would be in 1906, is my recollection. I know he has made use of the lots on east side of him. He had horses and chickens, and he built a fence around on each side. . . . He has had an inclosure on the lot to the west . . . He had a wooden fence around the lot on the west side. That fence was put in about two years after he moved into his own house, nearly as I can remember. . . . He had his horses and chickens there on the west side of his house."

John A. W. Sterlzriede testified he had known the plaintiff about eleven years, and that the plaintiff occupied and made use of, and has had horses on, lot 22. This witness, like the others, was not definite as to when the plaintiff first entered on lot 22.

It appears, then, that while these witnesses testified to a partial inclosure of lot 22, and that plaintiff had possession of and improved, used, and cultivated the land at specified times during the statutory period of five years, no one of them testified, nor is there in the entire testimony considered together any foundation for an inference that before November 12, 1907, he took possession of and for five years thereafter continuously used, improved, or cultivated lot 22. The determination of this issue, therefore, must rest alone on the testimony of plaintiff himself that he began work on lot 22 on "November 6, 1907," and in view of what we have said as to when he first entered upon the property, it must be held that the court resolved such testimony against him.

Having disposed of plaintiff's contentions as to the first two elements of his asserted adverse possession, it becomes unnecessary to consider the remaining question whether the taxes were paid by plaintiff for five years next preceding the commencement of the action, or to pass upon the assignments of error in rulings on evidence.

The defendants moved to dismiss the appeal, but as we have reached the conclusion that the judgment should be affirmed on the merits, it is not necessary to consider the motion.

The judgment is affirmed.

Shaw, J., concurred.

OLNEY, J., Concurring.—I concur in the conclusion reached by Justice Lawlor for the following reasons:

It was conceded at the trial that the defendant was the owner of the record title and the plaintiff's claim was solely one of title by adverse possession. The action was commenced November 12, 1912, but the defendant was not made a party by name nor was summons served upon her so far as appears. So far as appears, she did not become a party until July 25, 1913, when she voluntarily made herself one by filing a so-called answer and cross-complaint. I am not

at all certain but that under these circumstances the action was not commenced, so far as the defendant is concerned, until the later date, so that the plaintiff would have been entitled to judgment against her if he had shown adverse possession for the five years preceding that date, even if he failed to show it for the five years preceding the earlier date of the original commencement of the action.

But the finding of the court was a general one against the plaintiff, and implies a finding against the character of the plaintiff's possession as sufficient to give a title by prescription even if maintained for the statutory period. Even if we assume, therefore, that the plaintiff could depend upon a possession commencing five years before the defendant's appearance in the action, that is, a possession which commenced on or before July 25, 1908, instead of upon one commencing on or before November 12, 1907, the finding cannot be overturned unless the evidence shows unmistakably a possession by the plaintiff after July 25, 1908, of such a character as would ripen into a title by prescription. While perhaps it may be that the evidence was sufficient to have sustained a finding that plaintiff's possession was of that character, yet it did not, I think, show that fact so unmistakably as to preclude a contrary conclusion. This being the situation, the finding of the trial court is final.

Hearing in Bank denied.

All the Justices concurred.